UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINA C. RELENTE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> VIATOR, INC., <br><br> Defendant. | Case No. 12-cv-05868-JD <br><br> **ORDER RE PLAINTIFFS' MOTION FOR ATTORNEY'S FEES** <br><br> Re: Dkt. No. 79 |

On May 4, 2015, the Court entered final approval of the settlement in this consumer class action. *See* Dkt. No. 108. The settlement resolved plaintiffs' claim that defendant Viator, a company that markets and sells "tours and experiences" through its website, displayed misleading "strike-through prices" that overstated discounts on tour prices. *See* Sitkin Decl. ¶ 4, Dkt. No. 80.

Under the terms of the settlement, which are detailed in in prior orders, *see* Dkt. Nos. 76, 108, the class received payments from a $515,000 settlement fund, to be divided between the class members based on how much they paid for their tour. Proposed Settlement § 2.5, Dkt. No. 63-1. Viator is also subject to a permanent injunction requiring it to include a description of the basis for a strike-through price whenever it lists one on its website or apps. *Id.* § 5.

Plaintiffs' counsel have now moved for $500,000 in attorney's fees, litigation expenses of $22,256.50, and incentive awards of $5,000 for named plaintiff Rosalina Relente and $3,500 for named plaintiff Travis Anderson. None of these payments would come out of the class's settlement fund.

**I.    ATTORNEY'S FEES**

Rule 23(h) of the Federal Rules of Civil Procedure permits the award of reasonable attorney's fees in class actions. Fees are generally determined under the "lodestar" method or the

1  percentage-of-recovery method. The lodestar method uses an hourly rate approach that calculates
2  fees based on attorney work hours multiplied by a reasonable billing rate. *Blanchard v.*
3  *Bergerson*, 489 U.S. 87, 94 (1989). The percentage method awards fees by giving the attorneys a
4  fixed percentage of the monetary recovery they obtained for the settlement class. Plaintiffs'
5  counsel in this case want fees to be calculated using the lodestar, while Viator urges using the
6  percentage-of-recovery method. In either event, plaintiffs' counsel are limited to a maximum of
7  $500,000, as the members of the settlement class were told in the notice of settlement that their
8  class counsel would not recover anything more. *See* Notice of Settlement at 4, Dkt. No. 63-1 at
9  31.

### A. Lodestar vs. Percentage-of-Recovery

In general, where federal substantive law provides basis for the underlying cause of action, it is left up to the district court's discretion which method to use. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). But where, as here, plaintiff brings a state law claim, the Court looks to the state's law in deciding which method to use to calculate attorney's fees. *See id.*; *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 2062858, at *5 (N.D. Cal. May 4, 2015) (citing *Lealao v. Beneficial California, Inc.*, 97 Cal. Rptr. 2d 797, 803 (Cal. Ct. App. 2000)).

Plaintiffs' counsel base their claim to attorney's fees on California's private attorney general statute, *see* Cal. Civ. P. Code § 1021.5, and Viator does not dispute that the statute's requirements are met.[1] In general, if fees are awarded pursuant to this statute, they must be calculated using the lodestar method. *See Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 321-22

---

[1] The statute allows a court to award attorney's fees:

> to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

*Id.*

1  (1983).  A California Court of Appeal case has voiced some hesitancy about this rule by
2  suggesting that "the lodestar method is not necessarily utilized in common fund cases," *Lealao*, 97
3  Cal. Rptr. 2d at 803.  But that case also recognized that it is "questionable whether a pure
4  percentage fee can be awarded even in a conventional common fund case."  *Id.* at 813.  The Court
5  finds that *Lealao* is not a firm enough holding to displace the general use of the lodestar method
6  approved by the California Supreme Court, and that this case is likely outside *Lealao* anyway
7  because it is not a "conventional common fund case" -- a "common fund" in the context of
8  attorney's fees refers to situations where class counsel takes a slice of the recovery he or she
9  obtained for the class as a whole, not cases where, as here, recovery of attorney's fees do not
10 diminish the class members' recovery.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);
11 *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003).

12       It is also certainly true that the lodestar method has come in for criticism, especially by
13 federal courts.  *See In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal.
14 1989).  But California state courts have not abandoned the primacy of the lodestar approach,
15 although they have permitted courts to adjust the result of the lodestar calculation based on other
16 factors, including the results of a percentage-of-recovery calculation.  *See Lealao*, 97 Cal. Rptr. 2d
17 at 821.

18       Consequently, the Court' attorney's fees analysis will use the lodestar method.  That
19 method is particularly suited to this case because part of the relief the class obtained is an
20 injunction, whose value will not be reflected in the monetary award that is going to the class.  *See*
21 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("In employment, civil rights and
22 other injunctive relief class actions, courts often use a lodestar calculation because there is no way
23 to gauge the net value of the settlement or any percentage thereof.").  Viator claims that the
24 injunction is of little value, as it simply requires Viator to implement changes that it was already
25 planning on doing in any case.  But the difficulty in accurately valuing the injunction is itself a
26 reason to use the lodestar method, which does not require making factual determinations as to
27 what Viator would have done absent the injunction and what the value of the injunctive relief is to
28 Viator's customers.

### B. Lodestar Calculation

Plaintiffs' counsel claim a lodestar of $506,839.87 based on 798.77 hours of work by five attorneys (three partners, one of counsel, and one associate) and three staff members, but acknowledge that they cannot actually recover more than $500,000. *See* Motion for Attorneys' Fees at 3:10-21, Dkt. No. 79. Plaintiffs' counsel has submitted a declaration by Mark Chavez, a partner at a third-party law firm, in support of the hourly rates charged by the lawyers and staff, *see* Chavez Decl. ¶¶ 18-23, Dkt. No. 84. The Court also requested and carefully reviewed *in camera* the time records for the two law firms that represented plaintiffs -- the Law Offices of James M. Sitkin ("Sitkin"), and Ram, Olson, Cereghino & Kopczynski LLP ("ROCK"), to evaluate fees.

Viator does not object to the rates but does object to some of the hours claimed as duplicative or superfluous. Broadly speaking, Viator's allegations of duplicative and otherwise unnecessary work fit into a number of general categories, but none of the work appears redundant:

1. **Communications with co-counsel:** In a number of places, Viator alleges that the mere fact that Sitkin and ROCK communicated is unnecessarily duplicative. *See, e.g.*, Comparison at 1 ("Meet with co-counsel regarding legal strategy"); 2 ("debrief ROCK re above"), 7 ("Phone call with co-counsel regarding strategy."). But it is obvious that co-counsel will have to communicate with one another to provide adequate representation. Because of the way Sitkin's timesheets are kept, it is unclear exactly what proportion of Mr. Sitkin's time was spent on communications with co-counsel as opposed to other tasks, and it is true that during certain time periods, like February 2013, ROCK partner Karl Olson's time appears to have been primarily spent communicating with co-counsel and opposing counsel. But with the caveat that "determining whether work is unnecessarily duplicative is no easy task," *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008), the total number of hours billed does not appear to the Court unreasonable in light of the substantive work performed during these time periods.

2. **Work on similar pleadings and research:** Viator points out that entries in the summary of time worked show that Sitkin and ROCK both worked on certain filings, like the complaint and oppositions to Viator's motions to dismiss, *see id.* at 1-2, 4-5, or reviewing similar materials, like the Court's rules and orders, *see id.* at 2, 6, 7-9, 11 (review of Court's standing orders, orders on motions to dismiss, and deposition transcript, and preparation for settlement conference). Each of the allegedly duplicative tasks, however, involves significant filings on which co-counsel would understandably coordinate, or review of orders and other

4

   documents that all counsel would necessarily have to familiarize themselves with. This work also appears to be reasonably compensable.

3. **Unnecessary work:** Viator claims that Mr. Sitkin should not be permitted to recover for time spent in February 2013 drafting and discussing a motion to amend, because Viator eventually stipulated to the amendment. *See* Sitkin Decl. at 18:1-19:9. The stipulation was only filed on February 11, however, *see* Dkt. No. 18, and it was not unreasonable for Mr. Sitkin to work on the motion prior to the stipulation being entered into. Mr. Sitkin billed 13.3 hours on the case prior to February 13, and while his time records only divided up his time only by day, rather than task, the total time billed does not appear excessive -- especially given the fact that it included time spent negotiating the stipulation with opposing counsel. The Court concludes that the work is not obviously unnecessary.

4. **Excessive work performed by partners:** Viator also argues that a disproportionate share of the work performed by plaintiffs' counsel -- 82% of the total hours claimed -- was performed by partners, as opposed to associates or staff. This is in part an artifact of the fact that Mr. Sitkin is a solo practitioner without significant staff, and while the work could potentially have been farmed out to associates at the ROCK firm, the time records reveal that Mr. Sitkin took the lead in several substantive aspects of the case and may reasonably have been the lawyer best-placed to efficiently complete the tasks. Viator specifically objects to Mr. Sitkin's billing time for reviewing Viator's supplemental document production and legal research, but it appears that no significant time was expended on either. The former was simply one of many tasks Mr. Sitkin performed over the course of three days, all of which took 7.9 hours, while the latter appears related to a mediation brief and settlement conference that Mr. Sitkin worked extensively on, *see* Sitkin Decl. 22:10-23:7. Again, compensating plaintiffs' counsel for the work does not seem unreasonable.

Viator also argues that plaintiffs' hours should be cut down based on cross-checking against the results that would be obtained under a percentage-of-recovery calculation. Under Viator's proposed methodology, the percentage-of-recovery method should start with the size of a "constructive common fund" composed of the $515,000 payment to the class, the $500,000 cap on attorney's fees, and the $35,000 cap on costs -- or $1,050,000 in total. The Ninth Circuit has set a benchmark of 25% of the common fund when using the percentage-of-recovery method, *see In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (2011), which would yield attorney's fees of $262,500. But this calculation of course assumes that the injunction that the parties' settlement agreement requires is valueless. Viator tries to downplay the value of the injunction, based on a declaration by its Chief Financial Officer, Scott Halstead, that "[a]s its business has

5

1  grown, . . . Viator has increased the percentage of products displaying a Strikethrough Price with
2  Special Offer Text . . . ." But this is a far cry from establishing that the injunction has zero value.
3  It appears undisputed that as of February 2014, Viator did advertise strikethrough prices without
4  any explanatory text -- Viator's corporate representative testified at deposition that that was the
5  case. *See* Deposition of Timothy Lewis at 173:15-174:5, 174:13-22, Sitkin Supp. Decl. Ex. A,
6  Dkt. No. 103. And as a general matter, injunctive relief in a consumer case alleging misleading
7  advertising is almost always likely to be an important remedy. *See In re Tobacco II Cases*, 46 Cal.
8  4th 298, 319 (2009) ("the primary form of relief available under the UCL to protect consumers
9  from unfair business practices is an injunction"); *Colgan v. Leatherman Tool Grp.*, 38 Cal. Rptr.
10 3d 36, 64 (Cal. Ct. App. 2006) ("Injunctive relief is one of the principal remedies available for
11 violations of §§ 17200 and 17500." (citation omitted)). That importance cannot be readily
12 quantified, and the difficulty of valuing the injunction overall makes it all but impossible for the
13 Court to use the percentage-of-recovery method as a cross-check against the lodestar.
14        Accordingly, the Court awards plaintiffs' counsel attorney's fees of $500,000, the
15 maximum allowed under the settlement agreement. Because this award is all that is available
16 under the agreement, the Court does not need to reach plaintiffs' counsel's argument that an
17 upward multiplier to the lodestar is appropriate.

## II.     EXPENSES AND COSTS

Plaintiffs' counsel also claim $22,256.50 in costs, which is below the $35,000 limit set forth in the class notice. *See* Notice of Settlement at 4. Viator does not oppose the fee awards. The Court has reviewed the declarations from plaintiffs' counsel justifying the claimed expenses and costs, *see* Sitkin Decl. ¶ 36; Olson Decl. ¶ 31, Dkt. No. 81, finds them reasonable, and awards them.

## III.    INCENTIVE AWARDS

Plaintiffs also seek "inventive awards" for the two named plaintiffs: $5,000 for Rosalina Relente, and $3,500 for Travis Anderson. The Court, following the Ninth Circuit, has previously expressed strong skepticism of arrangements whereby named plaintiffs do better than ordinary members of the class, based on the danger that it may lead to collusive settlements. *See Myles v.*

6

*AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761, 2014 WL 6065602, at *6 (N.D. Cal. Nov. 12, 2014) ("Absent a particularized showing of expenses incurred or injury suffered by [the named plaintiff] (above and beyond those of the other proposed class members), an enhancement award is inappropriate."); *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527-JD, 2014 WL 5826335, at *6 (N.D. Cal. Nov. 10, 2012). There is nothing in this case that warrants overcoming that skepticism. This is not a situation where the named plaintiffs may be retaliated against, or where the plaintiffs have undertaken unusually extensive work on behalf of the class. *See Staton*, 327 F.3d at 977. Rather, their participation in the case appears to have been limited to occasional and routine meetings with counsel and sitting for deposition. *See* Declaration of Rosalina Relente ¶ 5, Dkt. No. 89; Declaration of Travis Anderson ¶¶ 7-10. Incentive awards are denied, but both named plaintiffs may be reimbursed any out-of-pocket costs and any work missed.

**IT IS SO ORDERED.**

Dated: June 9, 2015

_____
JAMES DONATO
United States District Judge